UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

-against-

VLADIMIR MRVIC,

Defendant.

Case No. 1:21-cv-8792 (JLR)

**MEMORANDUM OPINION
AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On October 28, 2021, Plaintiff the United States of America (the "Government") filed a one count complaint against Defendant Vladimir Mrvic to collect penalties that the IRS assessed against Defendant on October 29, 2019 relating to the 2011 tax year.  *See* ECF No. 1 ("Compl.") ¶ 26.  The Government moved on November 22, 2022 to serve Defendant using alternate service pursuant to Federal Rule of Civil Procedure 4(f)(3).  ECF Nos. 15-17.  The Government has been unsuccessful for months at serving Defendant in Serbia through the Hague Convention, and now seeks to serve Defendant – who may now be located at an unknown address in Bosnia-Herzegovina – through counsel in the United States.  *See generally* ECF No. 16 ("Brief in Support of Motion" or "Br.").  On December 2, 2022, the Court requested additional information regarding Defendant's United States counsel.  ECF No. 18.  The Government supplied an update on December 12, 2022 (ECF No. 19), and provided further information – including an additional request for alternate service via a tax preparer in Pittsburgh, Pennsylvania – on January 13, 2023 (ECF No. 21).  For the reasons set forth below, the Government's motion for alternate service is GRANTED in part.

## BACKGROUND

Defendant is a United States citizen who currently lives abroad.  *See* Compl. ¶ 9.  United States citizens must file with the IRS a "Report of Foreign Bank and Financial Accounts"

("FBAR") if they have an interest in a foreign bank or other financial account, and civil penalties attach for failure to abide by the FBAR reporting requirements.  *See* 31 U.S.C. § 5314(a); 31 U.S.C. § 5321; 31 C.F.R. § 1010.350(a).

The Government initiated an FBAR examination of Defendant, and in January 2018, Defendant submitted a signed power of attorney setting forth four attorneys who were authorized to communicate with the IRS regarding this matter.  *See* ECF No. 17, Declaration of AUSA Dominika Tarczynska ("Tarczynska Decl."), Ex. A.  Those attorneys were Seth G. Cohen, at the law firm of Zhong Lun New York, LLP, located at 2 Wall Street, 21st Floor, New York, NY 10005, and Aaron Schumacher, Shannon Smith Retzke, and Hallie Aronson, at the law firm of Withers Berman LLP, located at 157 Church Street, New Haven, CT 06510-2100.  *Id.*  There were various communications between the IRS and Defendant's counsel throughout the FBAR examination in 2018 and 2019.  *Id*. at ¶¶ 5-7; *see* Exs. B, C, D.  The IRS ultimately assessed about $4 million in penalties against Defendant in October 2019, and sent a letter to his last known address in Belgrade, Serbia, and to Mr. Cohen, as Defendant's authorized representative, demanding payment.  *Id.* at Ex. E.  No payment was received, and the Government filed the present complaint on October 28, 2021.  *See* Compl. ¶ 26.

The Government thereafter spent considerable time attempting to serve Defendant with the Complaint through the Hague Convention process.  *See* Br. at 3-4: *see also* Tarczynska Decl. ¶¶ 9-10, Exs. F & G.  The Belgrade Court ultimately relayed to the Government that it understood that Defendant was no longer in Serbia but in the Republic of Srpska, a constituent republic of Bosnia-Herzegovina.  Br. at 4.  The Government has not received any further communications from the Serbian Ministry of Justice and has no address for Defendant in Bosnia-Herzegovina, despite conducting further internet searches.  *Id*.; *see* Tarczynska Decl. ¶ 11.

The Government now requests authorization to serve Defendant pursuant to Rule 4(f)(3) on Defendant's United States counsel who represented him in the underlying FBAR administrative examination, or in the alternative, via Defendant's tax preparer listed on his 2021 tax returns that were filed in February 2022.  *See* ECF Nos. 15-16, 21.

## DISCUSSION

Federal Rule of Civil Procedure 4(f) provides three methods of service of an individual in a foreign country:  "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . [,] or (3) by other means not prohibited by international agreement, as the court orders."  "There is no hierarchy among the subsections in Rule 4(f), and a plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)."  *Doe v. Hyassat*, 342 F.R.D. 53, 58 (S.D.N.Y. 2022) (internal quotation marks and citations omitted).  "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court."  *Vega v. Hastens Beds, Inc.*, 342 F.R.D. 61, 64 (S.D.N.Y. 2022) (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)).  When determining whether to permit service pursuant to Rule 4(f)(3), courts also consider whether the "plaintiff has reasonably attempted to effectuate service on the defendant," and whether "the circumstances are such that the court's intervention is necessary."  *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 267 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).

Under Rule 4(f)(3), the first inquiry is whether the requested service is prohibited by international agreement, such as the Hague Convention.  Fed. R. Civ. P. 4(f)(3).  "In absence of any international agreement to the contrary, the issue is, then, whether service . . . would comport with constitutional due process."  *Lebanese Canadian Bank SAL*, 285 F.R.D. at 266.  "A court must . . . determine that the proposed method of service is reasonably calculated, under all the circumstances, to give actual notice to the party whose interests are to be affected by the suit or proceeding, and to afford him an adequate opportunity to be heard."  *Hyassat*, 342 F.R.D. at 58.  As part of that inquiry, courts must consider whether "a party seeking leave to serve an individual by counsel [has shown] adequate communication between the individual and the attorney."  *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012); *see Atlantica Holdings, Inc. v. BTA Bank JSC*, No. 13-cv-5790 (JMF), 2014 WL 12778844, at *3 (S.D.N.Y. Mar. 31, 2014) (concluding there was adequate communication between counsel and defendant).

Courts in this district have generally held that service on a defendant located abroad via U.S.-based counsel is permitted under the text of Rule 4(f)(3).  *See, e.g.*, *Zanghi v. Ritella*, No. 19-cv-5830 (NRB), 2020 WL 589409, at *5-7  (S.D.N.Y. Feb. 5, 2020) (collecting cases); *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) (noting that service through U.S. counsel "is a common form of service ordered under Rule 4(f)(3)"); *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at  267 ("In many instances, courts have authorized service under Rule 4(f)(3) on an unserved party's counsel.") (collecting cases); *RSM Prod. Corp. v. Fridman (RSM I)*, No. 06-cv-11512 (DLC), 2007 WL 1515068, at *2 (S.D.N.Y. May 24, 2007) ("Nor is service on Fridman through service on his lawyer in New York likely to violate constitutional standards of due process.") (collecting cases); *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04 -cv-

9641 (RCC), 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) (permitting service under Rule 4(f)(3) of U.S. counsel and U.K. counsel).

Some courts have found that service through counsel in the United States is not permissible under Rule 4(f)(3) because the text of Rule 4(f)(3) provides for alternate service "at a place not within any judicial district of the United States." *See, e.g.*, *Convergen Energy LLC v. Brooks*, No. 20-cv-3746 (LJL), 2020 WL 4038353, at *7-9 (S.D.N.Y. July 17, 2020) (collecting cases). This Court does not agree and instead follows the majority approach, which permits service through U.S. counsel, because "the relevant circumstance is where the defendant is, and not the location of the intermediary." *Wash. State Inv. Bd. v. Odebrecht, S.A.*, No. 17-cv-08118 (PGG), 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018); *Vega*, 342 F.R.D. at 65-66 (same). The U.S. counsel is a conduit to the service that is effectuated "at a place not within any jurisdiction of the United States." Rule 4(f); *see In re Cathode Ray Tube Antitrust Litigation*, 27 F. Supp. 3d 1002, 1010 (N.D. Cal. 2014) (holding that transmission of service papers on foreign individuals through the "conduit like a law firm or agent" in the United States is "in accordance with Rule 4's plain language"); *Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco*, 168 F. Supp. 3d 1, 14-15 (D.D.C. 2016) (noting that "the attorney functions as a *mechanism to transmit the service* to its intended recipient abroad") (emphasis in original) (citations omitted). Just as the service method of placing an item in the mail in the United States under Rule 4(f)(2)(C)(ii) is not inconsistent with service "at a place not within any judicial district of the United States," so too is serving a foreign individual's United States counsel as a means to provide notice to the individual. Finally, this Court does not agree with the argument that the text of Rule 4(h)(2) establishes that Rule 4(f) only permits service at "places" that are not within the United States. *See Convergen*, 2020 WL 4038353, at *8. Rule 4(h) simply refers back, for the purposes of corporate entities, to the processes set forth in Rules 4(e) and (f).

The Court now turns to whether Rule 4(f)(3) permits alternate service on United States counsel under the facts present here.  First, it appears that the Hague Convention, to which Bosnia-Herzegovina is a party, does not prohibit service through a representative in the United States.  *See, e.g.*, *RSM Prod. Corp. v. Fridman (RSM II)*, No. 06-cv-11512 (DLC), 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 707 (1988)); *Zanghi*, 2020 WL 589409, at *6.  Therefore, the remaining inquiry is whether this service is reasonably calculated to put Defendant on notice of this litigation, thereby comporting with due process.  *See In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 267;  *Fisher v. Petr Konchalovsky Found.*, No. 15-cv-09831, 2016 WL 1047394, at *2 (S.D.N.Y. Mar. 10, 2016) (noting that a means of service comports with due process if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950))).  The Court will look to whether the Government has shown "adequate communication" between Defendant and U.S. counsel such that this means of service will be reasonably likely to put Defendant on notice.  *See In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 267.

The Government has put forth evidence that U.S. counsel had an ongoing relationship with Defendant in the administrative tax action that forms the basis for this collection action, and communicated on Defendant's behalf with the IRS in at least 2018-19.  As part of the tax dispute, Defendant identified Mr. Cohen and the three Withers Berman attorneys as his representatives for communications with the IRS and provided them with power of attorney on his behalf.  *See* Tarczynska Decl., Ex. A.  In March 2018, Mr. Schumacher from Withers Berman communicated with the IRS on behalf of Defendant, in significant detail, regarding the

underlying tax dispute.  *See id.*, Ex. D.  In 2018 and 2019, Mr. Cohen frequently interacted with the IRS on Defendant's behalf.  *See id.* ¶ 6, Ex. C.

At the direction of the Court, the Government reached out to the four attorneys to determine if they would accept service on behalf of the Defendant, if they had contact information for the Defendant, or if they were in communication with Defendant.  *See* ECF Nos. 18-21.  Mr. Cohen informed the Government that he was unable to get in contact with Defendant, has not had any recent communication with Defendant, had no information about his current whereabouts, and does not currently represent him.  ECF No. 19 at 1-2.  He also indicated he is not authorized to accept service on Defendant's behalf.  *Id.*  Mr. Schumacher, on behalf of himself, Ms. Retzke and Ms. Aronson, also told the Government that they were unable to accept service on Defendant's behalf.  ECF No. 21 at 1.  However, he did not state whether he was in contact with the Defendant or had any means of communicating with Defendant.  *Id.* Instead, he told the Government it "is not appropriate" for the Government to ask for help when trying to locate Defendant, and that counsel would not provide any further information.  *Id.* Mr. Schumacher added that the Government "should not interpret or take this to mean that we have the information you have requested."  *Id.*

As a threshold matter, that counsel has represented they are not authorized to accept service on Defendant's behalf is not determinative as to whether the Court may permit alternate service on that counsel through Rule 4(f)(3).  *See, e.g.*, *Wash. State Inv. Bd*, 2018 WL 6253877, at *7-10 (ordering Rule 4(f)(3) service on U.S. counsel who refused to accept service on the defendant's behalf); *KPN B.V. v. Corcyra D.O.O.*, 08-cv-01549 (JGK), 2009 WL 690119, at *1-2 (S.D.N.Y. March 16, 2009) (same).  Instead, the question under Rule 4(f)(3), at this juncture, is whether service on the United States counsel is "reasonably calculated, under all of

the circumstances" to notify Defendant of the action.  *Fisher*, 2016 WL 1047394, at *2 (citations omitted).

Given that Mr. Cohen indicated he has not had recent communications with Defendant, attempted to reach him without success, and does not have contract information for him, the Court finds that service through Mr. Cohen would not be reasonably likely to notify Defendant of this action.  ECF No. 19 at 1-2.

In contrast, upon a request for information from the Government at the direction of the Court, the Withers Berman attorneys did not provide similar representations.  ECF No. 21 at 1. It is undisputed that they represented Defendant in the administrative tax examination that underlies this collection action.  *See* Br. at 7-8.  Moreover, Defendant gave them power of attorney in January 2018.  *See* Tarczynska Decl. ¶ 3 & Ex. A.  Mr. Schumacher specifically communicated with the IRS in providing a substantive, detailed, and lengthy protest letter to the IRS regarding the merits of the underlying FBAR dispute here.  *Id.*, Ex. D.  It is unlikely that Withers Berman could have prepared this significant submission on behalf of Defendant without extensive communications with Defendant, presumably in part through email, which would not necessarily be affected by any physical change of address by Defendant.  Despite their reticence to accept service, the Withers Berman attorneys are also officers of the Court, and it is assumed that they would comport with a Court directive to provide information to Defendant.  Therefore, it appears likely that Defendant will receive notice if he is served through the Withers Berman attorneys who represented him in the administrative tax proceeding that form the basis for the alleged arrears sought to be collected here.  *See Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, No. 22-cv-4594, 2022 WL 2758417, at *4 (S.D.N.Y. July 14, 2022) (permitting service on U.S. counsel because "it appears likely that [Defendant] will receive notice of this action if he is served through the lawyers he employed in the underlying . . .

proceeding"); *AMTO, LLC v. Bedford Asset Mgmt., LLC*, No. 14-cv-9913, 2015 WL 3457452, at *6 (S.D.N.Y. June 1, 2015) (holding that U.S. counsel was "unlikely to disregard receipt of service of process because they were already representing the defendant in [related disputes and] otherwise had knowledge of the underlying facts of the case in which service [will be] attempted").

This is not a case where a party requests alternative service on United States counsel with attenuated or no relationship with the party to be served. *See Madu, Edozie & Madu, P.C.*, 265 F.R.D. at 116-17 (concluding service on counsel was unlikely to notify defendants of case where attorneys stated they had never represented the defendants and did "not know where they live or how to contact them"); *Peifa Xu v. Gridsum Holding, Inc*., No. 18-cv-3655, 2020 WL 1508748, at *14 (S.D.N.Y. Mar 30, 2020) (refusing to allow alternative service for certain defendants in Hong Kong through U.S. counsel because counsel did not represent those defendants and there was no evidence of communication between counsel and those defendants).

Finally, the Court considers whether "plaintiff has reasonably attempted to effectuate service on the defendant," and whether "the circumstances are such that the court's intervention is necessary." *Lebanese Canadian Bank SAL*, 285 F.R.D. at 267 (internal quotation marks and citations omitted). Here, the Government spent considerable time and effort reasonably attempting to effectuate service on the Defendant under the Hague Convention based on his last known address in Serbia. *See, e.g.*, Br. at 3. The Government also coordinated with the Serbian Ministry of Justice to attempt service, and ultimately failed to both serve Defendant or obtain additional contact information. *See Vega*, 342 F.R.D. at 65 (noting need for service through Rule 4(f)(3) where service through Hague Convention was too slow). Other efforts to locate Defendant's current address have been unsuccessful, including internet searches for current contact information, and asking counsel to accept service on Defendant's behalf. The Court

9

concludes that these factors weigh in favor of ordering alternate service.  Accordingly, the Court

exercises its discretion to grant the Government's motion as to alternative service via

Mr. Schumacher, Ms. Retzke, and Ms. Aronson at Withers Berman LLP. [1]

## CONCLUSION

For the foregoing reasons, it is hereby ordered that the Government shall serve the

Summons, Complaint, and this Order by mail on Mr. Schumacher, Ms. Retzke, and

Ms. Aronson, within 14 days of the date of this Order with instructions to provide the documents

to the Defendant by mail and email.  The Government shall file a certificate of service on the

docket within three days of service.

Dated:  January 24, 2023
      New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

---

[1] The Government communicated with the IRS in an attempt to locate Defendant, and the IRS was able to identify a U.S.-based tax preparer who filed Defendant's most recent tax return in February 2022.  ECF No. 21 at 2.  In the alternative, the Government requests permission to serve Defendant through this tax preparer pursuant to Rule 4(f)(3).  *Id.*  While this filing may suggest that Defendant has been in recent communication with his tax preparer, the Court does not have a sufficient factual or legal basis to grant the request at this time.  The only information provided to the Court is a single tax form filed about 11 months ago.  Without more, the Court is unable to determine whether service on this individual would be reasonably likely to provide notice to Defendant.  In addition, the cases cited by the Government overwhelmingly relate to alternative service on United States counsel as opposed to a tax preparer who may only represent a client for a single tax return and who does not have the same duties as an officer of the Court. Accordingly, the Court denies that motion without prejudice to renew upon a showing of adequate communication between the tax preparer and Defendant, and additional legal briefing on the propriety of such service.